IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GEANNIE HENDERSON                                              PLAINTIFF

v.                          CIVIL NO. 16-5064

NANCY A. BERRYHILL,[1] Commissioner
Social Security Administration                                 DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Geannie Henderson, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on April 4, 2013, alleging an inability to work since April 14, 2012, due to coronary artery disease, chronic obstructive pulmonary disease (COPD), a constricted airway, restless leg syndrome, acid reflux, and depression. (Doc. 10, pp. 81, 190, 197). For DIB purposes, Plaintiff maintained insured status through September 30, 2013. (Doc. 10, pp. 17, 212). An administrative video

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

1

hearing was held on April 14, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 10, pp. 32-54).

By written decision dated September 2, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Doc. 10, p. 18). Specifically, the ALJ found Plaintiff had the following severe impairment(s): ischemic heart disease. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 10, p. 19). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can only occasionally climb, balance, kneel, stoop, crouch, and crawl; and the claimant can only occasionally perform overhead work.

(Doc. 10, p. 19). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a polisher-eyeglass frames and an addresser. (Doc. 10, p. 25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 15, 2016. (Doc. 10, pp. 5-10). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

### III. Discussion:

Plaintiff argues the following issues on appeal: 1) the ALJ erred in evaluating the opinion of Plaintiff's treating cardiologist, Dr. Carver; and 2) the ALJ erred in properly evaluating the opinion of the consultative examiner, Dr. Alemparte.[2]

#### A. Insured Status and Relevant Time Period:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on September 30, 2013. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of April 14, 2012, her alleged onset date

---

[2] The Court has re-ordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner.

of disability, through September 30, 2013, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

With respect to Plaintiff's SSI application, benefits are not payable prior to the date of application, regardless of how far back disability may, in fact, be alleged or found to extend. See 20 C.F.R. § 416.335. Therefore, the relevant period is from April 4, 2013, the date Plaintiff protectively applied for SSI benefits, through September 2, 2014, the date of the ALJ's decision.

### B. Subjective Complaints and Symptom Evaluation:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies

appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. In assessing Plaintiff's subjective complaints, the ALJ pointed out that Plaintiff was able to regularly attend to her personal hygiene; to provide care for her disabled husband and her four children, one of which is disabled; to assist with the care of the family pets, which included feeding and providing water to horses; to prepare meals; to perform light household chores; to shop for groceries; to handle her finances; to drive; and to attend her children's ball games. In September of 2013, Plaintiff indicated that her husband did most of the heavy chores, but she was able to take care of her personal needs, do light household chores, prepare meals, drive, shop for groceries and watch her children play ball. Plaintiff testified at the administrative hearing held on April 14, 2014, that she was able to do light household chores with breaks; to cook, noting her husband and son did most of the cooking; and to shop for groceries. When asked if she would be able to babysit her grandson for about eight hours, to include picking him up, Plaintiff testified that she would not be able to babysit for a full eight hours. Plaintiff also testified that she had difficulty reaching overhead because it pulled on her chest bone. The ALJ took that in to account when he limited Plaintiff to only occasional overhead reaching.

A review of the medical evidence revealed Plaintiff was diagnosed with coronary artery disease in 2007, and since that time had undergone heart catheterizations and other surgical procedures. The ALJ pointed out while Plaintiff experienced cardiac symptoms, the evidence revealed Plaintiff had also been non-compliant with her cardiac medications. Brown v.

6

Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted)("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."); 20 C.F.R. § 416.930(b). On more than one occasion when Plaintiff sought treatment in the emergency room with cardiac symptoms, she reported she had been out of her medication. The record further revealed that Plaintiff did not seek treatment for her cardiac problems from March of 2013, until January of 2014. In January of 2014, Plaintiff reported to Dr. Ben Hall that she had been prescribed medication but was not taking it. In January of 2014, Plaintiff was also seen by Dr. Carver, her treating cardiologist, who indicated that he had not seen Plaintiff in almost two years. After testing, Plaintiff was found to have a blockage and subsequently underwent bypass surgery in February of 2014 without complications. After reviewing the record as a whole, the Court finds substantial evidence supports the ALJ's determination the Plaintiff's cardiac impairment is severe but not disabling.

Plaintiff's medical providers also repeatedly recommended that Plaintiff stop smoking and despite these recommendations, Plaintiff continued to smoke throughout the relevant time period. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir.1997) (noting that a failure to follow prescribed treatment may be grounds for denying an application for benefits). This is not a case in which the correlation between Plaintiff's smoking and Plaintiff's impairment is not readily apparent. Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) (citations omitted). To the contrary, there is no dispute that smoking has a direct impact on Plaintiff's cardiac and pulmonary impairments. Thus, the ALJ appropriately considered Plaintiff's failure to stop smoking. Id.

Plaintiff argues she was non-complaint with taking her cardiac medication because she was unable to fill her prescriptions due to the lack of finances. In addressing Plaintiff's non-

compliance, the ALJ noted that Plaintiff had used the free health clinic so she was aware that assistance was available, and that Dr. Joel Carver had instructed Plaintiff to let his office know if she was unable to fill her prescriptions. While the medical evidence revealed Plaintiff's failure to take her medication as prescribed, the record failed to show Plaintiff had ever been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Furthermore, the evidence revealed Plaintiff continued to smoke throughout the relevant time period. Clearly, the money Plaintiff used to purchase cigarettes could have been used to obtain her medication.

With regard to Plaintiff's alleged mental impairments, the record failed to demonstrate that Plaintiff sought on-going and consistent treatment from a mental health professional during the relevant time period. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she is unable to engage in any gainful activity. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.     ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own

descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC." Id.

When determining the RFC, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. Id. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform sedentary work with limitations. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of treating, examining and non-examining medical professionals, and set forth the reasons for the

9

weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

In determining Plaintiff's RFC, the ALJ gave little weight to the March 23, 2012, medical source statement completed by Dr. Carver, opining that Plaintiff could perform less than sedentary work. After review, the Court finds that the ALJ did not err in discounting the opinion of Dr. Carver. The ALJ declined to give controlling weight to opinion for good and well-supported reasons. See Goff v. Barnhart, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion.").

Plaintiff also argues that the ALJ erred by failing to state the weight given to the opinion of Dr. J. A. Alemparte, a consultative examiner. The weight to be given to Dr. Alemparte's opinion is determined by the factors listed under 20 C.F.R. § 404.1527(c). Comstock v. Astrue, 923 F.Supp. 2d 1142, 1156 (N.D. Iowa 2013). The ALJ is not required to give reasons for the weight given to Dr. Alemparte's opinion, because he is not a treating source. Id. In determining Plaintiff's RFC, the ALJ noted that after testing Dr. Alemparte opined that Plaintiff had a normal electrocardiogram stress test; that there was no evidence of exercise-induced arrhythmias; and that Plaintiff had moderately reduced exercise tolerance. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### D. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a polisher-eyeglass frames and an addresser. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 24th day of August 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE